# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CALVIN BURKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 04-191-WDS |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**STIEHL, District Judge:**

Plaintiff, an inmate in the Shawnee Correctional Center at the time of the alleged events, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

The amended complaint (Doc. 4) contains 146 enumerated paragraphs of allegations regarding the events giving rise to this action, which begins with an incident that occurred on April 17, 2003, after Plaintiff arrived at Shawnee. He was issued clothing that was too small, and a verbal altercation arose. Plaintiff was taken to segregation; he claims he was subjected to excessive force and then denied medical treatment. He later received a disciplinary ticket for insolence; following a guilty finding on that ticket, he appealed through the grievance process. He also filed a grievance over his claims of excessive force and denial of medical treatment; those claims were investigated and apparently disbelieved. Plaintiff then received a second disciplinary ticket for providing false information to an employee. From this series of events, Plaintiff divides his amended complaint into

16 separate counts, as discussed below.

This case is now before the Court for a preliminary review of the complaint pursuant to 28

U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event,
> as soon as practicable after docketing, a complaint in a civil action in which a
> prisoner seeks redress from a governmental entity or officer or employee of a
> governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims
> or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief
>> may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such
>> relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any

supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions

of this action are legally frivolous and thus subject to summary dismissal.

## COUNT 1

Plaintiff generically alleges that all Defendants violated his constitutional rights, as

elaborated on in other counts.  This claim is simply too vague for Defendants to prepare a proper

response, particularly since Plaintiff later presents separate claims against specific Defendants

regarding specific actions.  Accordingly, Count 1 is dismissed from this action with prejudice.

## COUNT 2 AND COUNT 3

Count 2 is titled "against the defendants Customs and Policies," while Count 3 is "for

conspiracy."  These two claims are so intertwined as to constitute one claim.  In broad generalized

statements, Plaintiff claims that there is a "longstanding custom and policy" within the I.D.O.C. to

discredit inmate reports of staff abuse of inmates.  He then alleges that, as part of this policy, when

an altercation occurs between an inmate and an officer, the inmate will receive a false disciplinary ticket to cover up the officer's improper actions.  Further, employees will either remain silent, turn a blind eye to a situation, or in some cases provide false testimony against the inmate in furtherance of these policies.

Plaintiff interpolates this vast conspiracy from the two distinct incidents complained of in this action.  Such a theory is simply too vague, particularly since Plaintiff does not specify what Defendants should be held liable for these actions.  Furthermore, in these two claims Plaintiff makes no allegation that he suffered any cognizable injury due to these alleged policies.  His other claims make allegations of deprivations of his constitutional rights, but, as discussed below, none of his claims, save one, rises to the level of a potential constitutional violation.  That one surviving claim in Count 6 is against Guard  Davis for excessive force, but there is no suggestion that the altercation with Davis arose out of these alleged policies.

Accordingly, Count 2 and Count 3 are dismissed from this action with prejudice.

## COUNT 4

With broad generalities, Plaintiff alleges that Defendants retaliated against him for his reports of misconduct.  He claims that such retaliation manifested itself in false disciplinary charges that resulted in various penalties, as well as in the lack of response to his grievances over various other matters.

Prisoners have a First Amendment right to free speech, *see Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125 (1977); *Martin v. Brewer,* 830 F.2d 76, 77 (7th Cir. 1987), and restrictions on that right will be upheld only if they are "reasonably related to legitimate penological interests," *see Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989) (*citing Turner v. Safley,*

- 3 -

482 U.S. 78, 89 (1987)); *Massey v. Wheeler,* 221 F.3d 1030, 1035 (7th Cir. 2000). Further, prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory transfer); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (retaliation for filing lawsuit); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (per curiam) (same).

"A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman,* 226 F.3d at 573 (citation omitted). In this case, Plaintiff's three brief paragraphs (¶¶ 159-161) do not specify any particular defendant or any particular act of retaliation. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Rather, he incorporates by reference his prior allegations and leaves it to the Court to determine exactly what he means.

To reiterate the chronology of events, Plaintiff got into an altercation with Davis, which led to a disciplinary report for insolence. Plaintiff filed a grievance over the incident, but the grievance was denied. Dissatisfied with that response, Plaintiff filed a second grievance alleging excessive force and denial of medical care; that grievance led to an investigation by Internal Affairs. The investigation determined that Plaintiff was untruthful; he then received a second disciplinary report for providing false information to an employee, and for intimidation or threats. This series of events does not support a claim of retaliation; instead, it is a simple equation of misbehavior and consequences. Any other conclusion would mean that any disciplinary ticket received by an inmate

for misconduct would be done "in retaliation" for his misconduct, an interpretation not supported by any legal authority.

Therefore, Plaintiff has not presented a viable claim of retaliation, and Count 4 is dismissed from this action with prejudice.

## COUNT 5

Plaintiff alleges that Defendants demonstrated deliberate indifference to his health and safety by failing to hire, train and supervise employees.  Plaintiff does not specify which Defendants are alleged to be responsible for these actions, although the Court surmises that he refers to Defendant Rod R. Blagojevich (¶¶ 140-146).  Regardless of the intended defendant, a claim that any defendant failed to perform a duty constitutes, at best, a claim of negligence, but a defendant can never be held liable under § 1983 for negligence.  *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).  Accordingly, Count 5 is dismissed from this action with prejudice.

## COUNT 6

Plaintiff's next claim is for use of excessive force.  Referring back to the 146 enumerated paragraphs, the Court surmises that this claim relates to the incident involving Defendant Davis on April 17 (¶¶ 8-12).  On that date, when Davis took Plaintiff to the segregation unit, Plaintiff alleges that Davis "maliciously and sadistically twisted, tighten and raised plaintiff handcuffs and arms in such a manner to cause pain and injury."  He further states that Defendant Guard Vaughn "intervened but failed to stop Davis."  Finally, he states that Davis propelled him "face first into the shower wall," causing further injury.

The intentional use of excessive force by prison guards against an inmate without

penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Based on the allegations in the amended complaint, the Court cannot dismiss this claim against Davis at this point in the litigation. *See* 28 U.S.C. § 1915A. However, the only allegation against Vaughn is that his attempt to intervene was unsuccessful. This allegation certainly does not state a claim under the Eighth Amendment; accordingly, Vaughn is dismissed with prejudice from Count 6.

## COUNT 7

Plaintiff's next claim is brief – he alleges that Defendants "failed to provide prompt medical treatment for his injuries following the altercation with Davis." Referring back to the earlier allegations, the Court surmises that this claim pertains only to Defendants Lt. Austin (¶ 15), Kim Bigley (¶ 20) and Nurse Winters (¶¶ 29-33).

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, "negligence alone, or simple malpractice, is insufficient to state a claim for relief," *Kelly v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990), as is the provision of medical treatment other than that preferred by the inmate. *Estelle*, 429 U.S. at 107. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> In order to state a claim of cruel and unusual punishment under the Eighth Amendment, a prisoner must allege "'acts and omissions sufficiently harmful to evidence deliberate indifference to serious medical needs,'" *Benson v. Cady*, 761 F.2d 335, 340 (7th Cir. 1985), *quoting Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). "[T]he infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth [v. Franzen]*, 780 F.2d [645,] 652-53 [(7th Cir. 1985), *cert. denied*, 107 S.Ct. 71 (1986)]. Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653.

*Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Allegations of "refusal" to provide medical care, without more, will not establish deliberate indifference, nor will delay, even if serious injury results. *Id.*

In this case, Plaintiff makes no allegations to suggest that he had a "serious medical need" arising from Davis's twisting of handcuffs or pushing him into the shower. Further, he merely states that Austin denied him immediate medical care, and that Bigley later refused to investigate Plaintiff's allegations regarding denial of medical care. As for Winters, Plaintiff states that she came to see him on April 23. She later reported that he exhibited no swelling, bruising, tenderness or limited range of motion. Plaintiff alleges that this was a false report, as she did not conduct any

examination that could have led to those conclusions.  However, he makes no allegations regarding what injuries he had that required treatment; nor does he state what treatment, if any, she provided to him.

Accordingly, Plaintiff has failed to state a claim against either Austin, Bigley or Winters, and Count 7 is dismissed from this action with prejudice.

## COUNT 8

In this claim, Plaintiff alleges that he was denied his rights to due process.  He follows this heading with a litany of gripes about the two disciplinary proceedings that resulted in various sanctions, including time in segregation and revocation of good conduct credit.  He also complains about the denial of his grievances and appeals related to these incidents.  Finally, he alleges that these actions were racially motivated, thus violating his rights to equal protection.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 483 (1995).  The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*.  In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state.  *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).  If the inmate is housed at the most restrictive prison in the state, he or

- 8 -

she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison.  *Id.*  In the view of the Seventh Circuit, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small."  *Id.*  Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty."  *Id.*

In the case currently before the Court, Plaintiff sent to disciplinary segregation for six months on the second ticket, and for an unspecified amount of time on the first ticket.  Nothing in the complaint or exhibits suggests that the conditions that Plaintiff had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois.  Therefore, Plaintiff's due process claim regarding his time in segregation is without merit.  Likewise, Plaintiff's claim regarding his disciplinary transfer to Menard is without merit, as he has no constitutionally protected liberty interest in remaining constitutionally protected liberty interest in remaining in a particular institution with state system.  *Shango v. Jurich*, 681 F.2d 1091, 1098 (7th Cir. 1982).  These claims are dismissed from this action with prejudice.

A loss of good time credit, on the other hand, does implicate a liberty interest because such a loss potentially affects the length of Plaintiff's sentence.  As such, Plaintiff may present a cognizable due process claim regarding six months of good time credit revoked in the June 2003 disciplinary proceeding.  However, the proper method for challenging the revocation of good time credit is habeas corpus, but only after Plaintiff has exhausted his remedies through the Illinois state courts.  *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994).  The Illinois courts have

recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen,* 417 N.E.2d 242, 247, *aff'd on reh'g,* 420 N.E.2d 1203 (Ill.App. 1981)). The State of Illinois must first be afforded an opportunity, in a mandamus action pursuant to 735 ILCS 5/14-101 *et seq.* to consider the merits of Plaintiff's claim. Accordingly, this claim is dismissed without prejudice to Plaintiff bringing his claims in a properly filed habeas corpus action, ***but only after he has exhausted his state court remedies***.

As for his conclusory allegation regarding equal protection, racial discrimination by state actors violates the Equal Protection Clause of the Fourteenth amendment unless it is narrowly tailored to serve a compelling state interest. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). However, to state an equal protection claim, a plaintiff must allege that a state actor has purposely treated him differently than persons of a different race. *Id.* Such is not the situation here; the allegations in the complaint do not provide any basis for Plaintiff's belief that these disciplinary actions were racially motivated, or that he was singled out and treated differently than those inmates of other races. Therefore, his equal protection claim is also dismissed from this action with prejudice.

## COUNT 9

This claim specifically invokes *Sandin*: Plaintiff alleges that his aggregate term of 225 days in segregation, a transfer to a maximum security facility and confinement to his cell imposed an "atypical hardship" upon him. Such hardship was compounded by postponement of a deposition in other pending litigation, restrictions on visitation, telephone privilege, and access to educational, rehabilitative and religious programs.

As discussed above in Count 8, Plaintiff has no protected liberty interest in remaining in general population or retaining any of these privileges. *Wagner*, 128 F.3d at 1175. *See also Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges). Accordingly, Count 9 is dismissed from this action with prejudice.

## COUNT 10

In this claim, Plaintiff alleges that Defendants acted in violation of the Illinois "hate crime" statute, 720 ILCS § 5/12-7.1. This claim seems to be directed solely at Defendant Davis, who allegedly directed racial epithets at Plaintiff when he escorted him to segregation while twisting on Plaintiff's handcuffs. (¶ 9)

> A person commits hate crime when, by reason of the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual or group of individuals, regardless of the existence of any other motivating factor or factors, he commits assault, battery, aggravated assault, misdemeanor theft, criminal trespass to residence, misdemeanor criminal damage to property, criminal trespass to vehicle, criminal trespass to real property, mob action or disorderly conduct as these crimes are defined in Sections 12-1, 12-2, 12-3, 16-1, 19-4, 21-1, 21-2, 21-3, 25-1, and 26-1 of this Code, respectively, or harassment by telephone as defined in Section 1-1 of the Harassing and Obscene Communications Act, or harassment through electronic communications as defined in clauses (a)(2) and (a)(4) of Section 1-2 of the Harassing and Obscene Communications Act.

720 ILCS § 5/12-7.1(a).

Although subsection (c) provides for a private civil right of action, the allegations in the complaint do not state that Davis's actions were racially motivated, and such a motive cannot be inferred simply by his use of racial epithets. It is an unfortunate that name-calling and verbal

- 11 -

harassment is part of the reality of prison life, but not every action by an officer can be elevated to

a hate crime simply because it was accompanied by verbal harassment.  Accordingly, Plaintiff has

failed to state a claim against Davis under the Illinois Hate Crime statute, and Count 10 is dismissed

from this action with prejudice.

## COUNT 11

Plaintiff next raises the Illinois criminal prohibition against intimidation, again without

referencing a specific defendant.  Therefore, the Court assumes that this claim also pertains to Davis.

> A person commits intimidation when, with intent to cause another to perform or to
> omit the performance of any act, he communicates to another, whether in person, by
> telephone or by mail, a threat to perform without lawful authority any of the
> following acts:
>
> > (1) Inflict physical harm on the person threatened or any other person
> > or on property; or
> > (2) Subject any person to physical confinement or restraint; or
> > (3) Commit any criminal offense; or
> > (4) Accuse any person of an offense; or
> > (5) Expose any person to hatred, contempt or ridicule; or
> > (6) Take action as a public official against anyone or anything, or
> > withhold official action, or cause such action or withholding; or
> > (7) Bring about or continue a strike, boycott or other collective
> > action.

720 ILCS § 5/12-6(a).

Unlike the hate crime statute referenced in Count 10, the intimidation statute does not

provide for a private right of action.  Furthermore, this statutory provision has been recognized as

unconstitutional.  *See People v. Lindsey*, 753 N.E.2d 1270, 1272, 324 Ill.App.3d 193, 193, 257

Ill.Dec. 644, 644 (Ill.App. 4 Dist. 2001); *United States ex rel. King v. Cahill-Masching*, 169

F.Supp.2d 849, 852 (N.D.Ill. 2001).  Accordingly, Plaintiff has no claim under this statute, and

Count 11 is dismissed from this action with prejudice.

- 12 -

## COUNT 12

Continuing his reliance on the Illinois criminal code, Plaintiff next presents a claim of recklessness, referencing 720 ILCS § 5/3-7 as the basis for this claim.  This particular statute, however, sets forth exclusions to the limitations periods for commencing a criminal prosecution; it does not provide for any cause of action.  Perhaps Plaintiff meant to rely upon 720 ILCS 5/12-5, which mandates criminal penalties for generalized reckless conduct.  Or maybe he meant 720 ILCS 5/4-6, but that statute merely provides a definition of recklessness.  In short, Plaintiff cannot bring a criminal action against any defendant for recklessness under any of these statutes, and Count 12 is dismissed from this action with prejudice.

## COUNT 13

Plaintiff's last invocation of the Illinois criminal code attempts to bring a claim of official misconduct, pursuant to 720 ILCS § 5/33-3.  Again, this is a criminal statute that does not provide for a private right of action or civil remedy.  Accordingly, Plaintiff has failed to state a claim under this statute, and Count 13 is dismissed from this action with prejudice.

## COUNT 14

Plaintiff next asserts a separate claim to collect attorneys' fees under 42 U.S.C. Section 1988. Subsection (b) permits a court to allow reasonable attorneys' fees to a prevailing party in a civil rights action under 42 U.S.C. Section 1983, but this section does not provide for a separate cause of action.  Rather, such a request should be included as part of Plaintiff's prayer for relief.[1]

---

[1]    "The Prison Litigation Reform Act of 1995 ('PLRA') establishes additional limitations on those fees in cases brought by prisoners.  The fee must be 'directly and reasonably incurred in proving an actual violation of the plaintiff's rights,' 42 U.S.C. Section 1997e(d)(1)(A), and 'the amount of the fee [must be] proportionately related to the court ordered relief for the violation,' 42 U.S.C. Section 1997e(d)(1)(B)(i).  The hourly rate is capped at 150 percent of the rate

- 13 -

Accordingly, as a separate count, this claim is dismissed from this action without prejudice to Plaintiff seeking appropriate attorneys' fees, should he be the prevailing party in this action with qualifying fees to be paid.

## COUNT 15

This count, against Wexford Health, essentially echoes the claims made in Count 7 against Defendant Winters.  He argues that Wexford "has a custom and policy of hiring medical staff that cannot perform their duties properly."  Thus, by implication, Wexford is liable for any injury he sustained due to Winters's actions.

Because the claim against Winters has been dismissed, it follows that Plaintiff has no viable claim against Wexford.  Accordingly, Count 15 is dismissed from this action with prejudice.

## COUNT 16

In his final count,  Plaintiff alleges medical negligence against Wexford Health Source.  Under Illinois law, a plaintiff "in any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must, ***within 90 days of the filing of the complaint***, file an affidavit that indicates that as to each defendant, the plaintiff has consulted with a qualified health professional who has reviewed his claim and provided a written report that the claim is reasonable and meritorious.. *See*

---

for court-appointed counsel under 18 U.S.C. Section 3006A, and attorneys fees are effectively capped at 150% of the judgment.  42 U.S.C. Section 1997e(d)(3); 42 U.S.C. Section 1997e(d)(2).  Additionally, 'a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant.'  42 U.S.C. Section 1997e(d)(2).  Compensatory damage awards must also be 'paid directly to satisfy any outstanding restitution orders pending against the prisoner' before the plaintiff receives the balance.  Prison Litigation Reform Act of 1995, Section 807 (statutory note to 18 U.S.C.A Section 3626).

*Farella v. Hockaday*, 304 F.Supp.2d 1076, 1079 (C.D.Ill. 2004).

735 ILL. COMP. STAT. §5/2-622(a) (West 2002).  Failure to file the required affidavit is grounds for dismissal of the claim.  *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000).  Plaintiff has failed to file the necessary affidavit, and 90 days has more than elapsed since he filed this action.  Therefore, this claim is dismissed with prejudice from the action.

## OTHER DEFENDANTS

Plaintiff has named the Illinois Department of Corrections as the lead defendant in this action.  However, the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Indiana Department of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir. 1990) (same).  Accordingly, the I.D.O.C. is dismissed from this action with prejudice.

Plaintiff has also named assorted John Doe defendants – mailroom employees, correctional employees, and informants.  Even with an expansive, liberal reading of the complaint, it is clear that none of these unknown individuals was involved in the altercation between Plaintiff and Davis.  It follows that these Defendants, too, are dismissed from this action with prejudice.

## SURVIVING CLAIMS

To sum up the above discussion, the only surviving claim in this action is the claim of excessive force against Guard Davis, as alleged in Count 6 (¶¶ 8-14, 166-167).

<u>DISPOSITION</u>

**IT IS HEREBY ORDERED** that **COUNT 1, COUNT 2, COUNT 3, COUNT 4, COUNT 5, COUNT 7, COUNT 8, COUNT 9, COUNT 10, COUNT 11, COUNT 12, COUNT 13, COUNT 14, COUNT 15**, and **COUNT 16** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Defendants **ANDERSON, AUSTIN, BARD, BARNARD, BENSKO, BIGLEY, BLAGOJEVICH, BOWELS, REGINA DAVIS, DENNISON, FORD, GROANING, HILLIARD, HOFFARD, ILLINOIS DEPARTMENT OF CORRECTIONS, MCGILL, RUSSELL, SNYDER, TUCKER, VAUGHN, UNKNOWN CORRECTIONAL EMPLOYEES, UNKNOWN INFORMANTS, UNKNOWN MAILROOM EMPLOYEES, WALKER, WEXFORD HEALTH SOURCE** and **WINTERS** are **DISMISSED** from this action with prejudice.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendant **GUARD DAVIS**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the amended complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendant **GUARD DAVIS** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the amended complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can

- 16 -

be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to

defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED: August 29, 2006.**


**s/ WILLIAM D.  STIEHL**
**DISTRICT JUDGE**